1  Daniel A. Lev (CA Bar No. 129622)
    dlev@sulmeyerlaw.com
2  Asa S. Hami (CA Bar No. 210728)
    ahami@sulmeyerlaw.com
3  David V. Sack (CA Bar No. 304528)
    dsack@sulmeyerlaw.com
4  **Sulmeyer**Kupetz
   A Professional Corporation
5  333 South Grand Avenue, Suite 3400
   Los Angeles, California 90071-1406
6  Telephone: 213.626.2311
   Facsimile: 213.629.4520

7
   Attorneys for Plaintiff, Howard M. Ehrenberg, Chapter 7 Trustee
8
## UNITED STATES BANKRUPTCY COURT
9
## CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION

| | |
|---|---|
| In re | Case No. 6:18-bk-20286-WJ |
| PHILMAR CARE, LLC, | Chapter 7 |
| Debtor. | Adv. No. |
| HOWARD M. EHRENBERG, solely in his capacity as chapter 7 trustee, | **COMPLAINT FOR (1) AVOIDANCE AND RECOVERY OF AVOIDABLE PREFERENTIAL TRANSFERS, (2) AVOIDANCE AND RECOVERY OF AVOIDABLE FRAUDULENT TRANSFERS, (3) AVOIDANCE AND RECOVERY OF POST-PETITION TRANSFERS; AND (4) DISALLOWANCE OF CLAIMS** |
| Plaintiff, | |
| vs. | |
| RENEW HEALTH GROUP, LLC, a California limited liability company; RENEW HEALTH CONSULTING SERVICES, LLC, a California limited liability company; CANYON VISTA POST ACUTE LLC, a California limited liability company; and CRYSTAL SOLORZANO, an individual, | DATE:<br>TIME:    [To Be Set By Summons]<br>PLACE: |
| Defendants. | |

ASH 2707418v5

For his "Complaint for (1) Avoidance and Recovery of Avoidable Preferential Transfers, (2) Avoidance and Recovery of Avoidable Fraudulent Transfers, (3) Avoidance and Recovery of Post-Petition Transfers, and (4) Disallowance of Claims" (the "Complaint"), plaintiff Howard M. Ehrenberg ("Plaintiff"), the duly appointed, qualified, and acting chapter 7 trustee for the bankruptcy estate of Philmar Care, LLC (the "Debtor"), hereby alleges as follows:

**STATEMENT OF JURISDICTION, NATURE OF PROCEEDING, AND VENUE**

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a). This action is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (F), (H), and (O). This action is a proceeding arising in and/or related to the bankruptcy case of In re Philmar Care, LLC, bearing Case No. 6:18-bk-20286-WJ (the "Bankruptcy Case"), which is a case under chapter 7 of title 11 of the United States Code, 11 U.S.C. § 101 et seq., (the "Bankruptcy Code"), and which is pending in the United States Bankruptcy Court for the Central District of California, Riverside Division (the "Bankruptcy Court" or "Court"). Regardless of whether this proceeding is core, non-core, or otherwise, Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court. Defendants (defined below) are hereby notified that Rule 7008 of the Federal Rules of Bankruptcy Procedure requires defendants to plead whether consent is given to the entry of a final order and judgment by the Bankruptcy Court.

2. Venue properly lies in this judicial district pursuant to 28 U.S.C. §§ 1408 and 1409.

**PARTIES AND ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

3. Plaintiff is the chapter 7 trustee for the Debtor's bankruptcy estate (the "Estate") and its respective creditors. Plaintiff brings this action solely in his capacity as chapter 7 trustee for the Estate and its creditors. To the extent that Plaintiff hereby asserts claims under 11 U.S.C. § 544(b), Plaintiff is informed and believes, and based thereon alleges, that there exists in this Bankruptcy Case one or more creditors holding unsecured claims allowable under 11 U.S.C. § 502 or that are not allowable only under

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

11 U.S.C. § 502(e) who could have avoided and/or recovered the respective transfers or obligations under California or other applicable law before the Petition Date (defined below). Such creditors include, among others, those creditors who are listed in the Debtor's schedules of assets and liabilities (the "Schedules") as holding undisputed claims or who have filed proofs of claim against the Estate.

4. As alleged below, Plaintiff was appointed as chapter 11 trustee, and then as chapter 7 trustee, after the Debtor commenced this Bankruptcy Case. As a result, Plaintiff does not have personal knowledge of the facts alleged in this Complaint that occurred prior to his appointment and, therefore, alleges all those facts on information and belief. Plaintiff reserves the right to amend this Complaint to allege additional claims against Defendants and to challenge and recover transfers made to or for the benefit of Defendants in addition to those transfers alleged in this Complaint.

5. Defendant Renew Health Group, LLC ("RHG"), is a California limited liability company authorized to do business, and is, or, at all relevant times was, doing business, in the State of California. Plaintiff is informed and believes, and based thereon alleges, that, at all relevant times, RHG was an entity for whose benefit certain of the avoidable and recoverable transfers alleged in this Complaint were made and/or a transferee of such transfers.

6. Defendant Renew Health Consulting Services, LLC ("RHC'"), is a California limited liability company authorized to do business, and is, or, at all relevant times was, doing business, in the State of California. Plaintiff is informed and believes, and based thereon alleges, that, at all relevant times, RHC was an entity for whose benefit certain of the avoidable and recoverable transfers alleged in this Complaint were made and/or a transferee of such transfers.

7. Defendant Canyon Vista Post Acute LLC ("Canyon Vista'") is a California limited liability company authorized to do business, and is, or, at all relevant times was, doing business, in the State of California. Plaintiff is informed and believes, and based thereon alleges, that, at all relevant times, Canyon Vista was an entity for

whose benefit certain of the avoidable and recoverable transfers alleged in this Complaint were made and/or a transferee of such transfers.

8. Defendant Crystal Solorzano ("Solorzano," and collectively with RHG, RHC, and Canyon Vista, "Defendants") is an individual who is, or, at all relevant times was, residing in the State of California or other state within the United States. Plaintiff is informed and believes, and based thereon alleges, that, at all relevant times, Solorzano was an entity for whose benefit certain of the avoidable and recoverable transfers alleged in this Complaint were made and/or a transferee of such transfers.

9. Plaintiff is informed and believes, and based thereon alleges, that Solorzano is the principal and/or owns all, or the majority, of the equity interests in each of RHG, RHC, and Canyon Vista. Plaintiff is further informed and believes, and based thereon alleges, that Solorzano is, or, at all relevant times was, the CEO and/or Managing Member of each of RHG, RHC, and Canyon Vista.

10. Plaintiff is informed and believes that, as of the Petition Date, the Debtor was the licensed operator of a 204-bed skilled nursing facility commonly known as the "San Fernando Post-Acute Hospital" (the "Debtor Facility"), which was being operated pursuant to that "Lease and Skilled Care Nursing Facility Operator's Agreement" dated January 1, 2008, by and between El Sereno Manor, Inc. ("El Sereno"), as lessor, and the Debtor, as lessee.

11. On March 8, 2017, the Debtor Facility was cited by the California Department of Healthcare Services ("DHS") to correct various deficiencies. Although the Debtor claims it was able to resolve the deficiencies cited by the DHS, the Centers for Medicare and Medicaid Services designated the Debtor Facility as a "Special Focus Facility" (the "SF Designation").

12. As the payroll tax liabilities of the Debtor began to mount as a result of the continuous imposition of penalties and fees, in or about June 2016, the Debtor employed a healthcare broker in order to market the Debtor Facility and generate proceeds sufficient to satisfy the liabilities of the Debtor, including, but not limited to the

ASH 2707418v5                           -4-

1  outstanding payroll tax liabilities.  In the course of that process, the Debtor reached an

2  agreement with its lessor by which the lessor would create a single purpose entity for the

3  purpose of participating in the sale process and resolving other matters unrelated to the

4  Debtor Facility.  To this end, on or about August 31, 2018, Golden State Health Centers,

5  Inc. ("Golden State"), El Sereno, Martin Weiss, Hadassah Weiss, the Debtor, P & M

6  Management, Inc. ("PM Management"), Philip Weinberger ("Weinberger"), Marylynn

7  Mahan ("Mahan"), Mesa Glen Holdings, LLC, Sela Healthcare, Inc., Silverscreen

8  Healthcare, Inc., and P & M Holdings Corporation (collectively, the "MOU Parties")

9  entered a "Memorandum of Understanding" (the "MOU").  Pursuant to the MOU, among

10 other things, a management agreement by and between the Debtor and Foothill Legacy,

11 LLC (the "Foothill Management Agreement"), was finalized by and between the Debtor

12 and Foothill Legacy, LLC ("Foothill") (an affiliate of Golden State).  In accordance with the

13 terms of the Foothill Management Agreement, as of August 31, 2018, Foothill assumed

14 all operational responsibility for the Debtor Facility, and continued to act as the manager

15 and operator of the Debtor Facility.

16         13.    Aside from the liabilities, if any, due and owing to Foothill and/or

17 certain other MOU Parties under the MOU or the Foothill Management Agreement, the

18 Internal Revenue Service (the "IRS") filed a proof of claim in the amount of

19 $5,209,868.19, of which $3,929,288.68 is alleged to be a secured claim.  In addition,

20 Plaintiff is informed and believes, and based thereon alleges, that the Employment

21 Development Department of the State of California (the "EDD") is owed approximately

22 $550,000 in unpaid taxes, and that the DHS is owed approximately $500,000 to

23 $1,000,000 in Quality Assurance Fees ("QA Fees").

24         14.    Plaintiff is informed and believes, and based thereon alleges, that

25 due to the Debtor's failure to remit approximately $1,300,000 of an approximately

26 $3,300,000 overpayment made by Medi-Cal (the "Medi-Cal Overpayment"), as of the

27 Petition Date, the Debtor's Medi-Cal payments were not being made until the full amount

28 of the unreturned overpayment is recouped and/or offset.

ASH 2707418v5                           -5-

15. Plaintiff is informed and believes, and based thereon alleges, that, as of the Petition Date, Foothill and the IRS were asserting a security interest in most, if not all, of the Debtor's assets, including, without limitation, inventory, equipment, accounts receivable (including healthcare insurance receivables), fixtures, and general intangibles, and, prior to the Petition Date, the EDD was levying on one of the Debtor's bank accounts to satisfy its pre-petition claim.

16. Plaintiff is informed and believes, and based thereon alleges, that the Debtor was insolvent going as far back as, at least, 2014, and during the time when each of the transfers alleged herein (collectively, the "Transfers") was made. More particularly, pursuant to records of the Debtor, Plaintiff is informed and believes, and based thereon alleges, that the Debtor's liabilities significantly exceeded its assets in each of 2014, 2015, 2016, 2017, and 2018, and each month of each such year.

17. Plaintiff is informed and believes, and based thereon alleges, that during the time when the Transfers were made, the Debtor generally was not paying its debts as they became due. For example, Plaintiff is informed and believes, and based thereon alleges, that, during the period the Transfers were made, the Debtor was severely behind in payment of its QA Fees, was incurring enormous tax and other liabilities to the IRS and other governmental agencies, and, ultimately, received the SF Designation. As reflected in proofs of claim filed in the Bankruptcy Case and the Debtor's bankruptcy schedules filed in the Bankruptcy Case: (i) the IRS filed a proof of claim for over $5.2 million, a portion of which relates to taxes from at least as early as 2014, (ii) the DHS filed a proof of claim for over $1.1 million on account of outstanding QA Fees from at least as early as 2013/2014, (iii) the Debtor scheduled a claim of over $655,000 owed to the EDD for periods at least as early as 2014, and (iv) a wage and hour class action suit was filed in 2013 that was still pending in 2018.

18. Plaintiff is informed and believes, and based thereon alleges, that during a time when the Debtor was insolvent and/or otherwise in a severe precarious financial state - for example, as alleged above, having received the SF Designation,

incurred significant payroll tax liabilities, and fallen significantly behind on its obligations to the IRS, the EDD, and the DHS - and further exacerbating the Debtor's unstable financial condition, significant sums of the Debtor's funds, including, but not necessarily limited to, cash received by virtue of substantial Medi-Cal Overpayment, were transferred to PM Management, which, in turn, were transferred to or for the benefit of one or more of Defendants, and for which the Debtor did not receive any benefit or reasonably equivalent exchange of value.

19. Plaintiff is informed and believes, and based thereon alleges, that: (a) during the four years prior to the Petition Date, the Debtor transferred in the aggregate of, at least, $25,996,667.15 to or for the benefit of PM Management (the "4-Year PM Management Transfers"); (b) during the two years prior to the Petition Date, the Debtor transferred in the aggregate of, at least, $22,787,585.06 to or for the benefit of PM Management (the "2-Year PM Management Transfers"); (c) during the one year period prior to the Petition Date, the Debtor transferred in the aggregate of, at least, $20,752,689.48 to or for the benefit of PM Management (the "1-Year PM Management Transfers"); and (d) during the 90-days prior to the Petition Date, the Debtor transferred in the aggregate of, at least, $6,179,208.85 to or for the benefit of PM Management (the "90-Day PM Management Transfers." and collectively with the 4-Year PM Management Transfers, the 2-Year PM Management Transfers, and the 1-Year PM Management Transfers, the "PM Management Transfers").

20. Plaintiff is informed and believes, and based thereon alleges, that the PM Management Transfers are comprised of funds that were property of the Debtor (the "Debtor Funds") and that such transfers are avoidable as preferential transfers and/or fraudulent transfers under, *inter alia*, 11 U.S.C. §§ 544, 547, 548, and California Civil Code section 3439 *et. seq.* Plaintiff already filed a complaint against PM Management (among other parties) (the "PM Management Complaint"), commencing a separate adversary proceeding in this Court, captioned Howard M. Ehrenberg v. P & M Management, Inc. et al., Adv. Proc. No. 6:21-ap-01055 (the "PM Management Action"),

which, among other things, seeks to avoid and recover the PM Management Transfers. The allegations and contents of the PM Management Complaint, including the exhibits thereto, are incorporated herein by this reference only to the extent necessary or relevant to, and/or supportive of, the claims asserted in the present Complaint against Defendants.  The PM Management Action remains pending.

21. Plaintiff is further informed and believes, and based thereon alleges, that, after receipt of the Debtor Funds comprising the PM Management Transfers, PM Management transferred certain of those Debtor Funds to or for the benefit of one or more Defendants and, in turn, Defendants are transferees or beneficiaries of transfers subject to avoidance and recovery.  More specifically, Plaintiff is informed and believes, and based thereon alleges, that following receipt of the Debtor Funds, PM Management transferred no less than $3,687,393.14 of the Debtor Funds in a series of transfers as follows (collectively, the "Renew Transfers," and each, a "Renew Transfer"):

   a. on October 10, 2018, wire transfer to RHC in the amount of $139,446.05;

   b. on October 11, 2018, wire transfer to RHC in the amount of $68,847.09;

   c. on November 15, 2018, wire transfer to RHC in the amount of $300,000;

   d. on November 16, 2018, wire transfer to RHC in the amount of $125,000;

   e. on November 20, 2018, wire transfer to RHC in the amount of $300,000;

   f. on November 21, 2018, wire transfer to RHC in the amount of $300,000;

   g. on November 26, 2018, wire transfer to RHC in the amount of $300,000;

        h.    on November 28, 2018, wire transfer to Canyon Vista in the amount of $100,000;

        i.    on December 4, 2018, wire transfer to RHC in the amount of $300,000;

        j.    on December 6, 2018, wire transfer to RHC in the amount of $300,000;

        k.    on December 11, 2018, wire transfer to RHC in the amount of $52,000;

        l.    on December 12, 2018, wire transfer to RHC in the amount of $101,000;

        m.    on December 14, 2018, wire transfer to RHC in the amount of $101,200;

        n.    on December 19, 2018, wire transfer to RHC in the amount of $85,900;

        o.    on December 21, 2018, wire transfer to RHC in the amount of $108,100;

        p.    on December 24, 2018, wire transfer to RHC in the amount of $754,000;

        q.    on December 27, 2018, wire transfer to RHC in the amount of $103,800;

        r.    on December 28, 2018, wire transfer to RHC in the amount of $108,000; and

        s.    on December 31, 2018, wire transfer to RHC in the amount of $40,100.

22.    On December 7, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court, Central District of California, Riverside Division, commencing the above-captioned case.

23. On December 21, 2018, the Court entered its "Order to Show Cause Regarding Appointment of a Chapter 11 Trustee or Conversion of the Case to Chapter 7".

24. On January 8, 2019, the Court appointed a chapter 11 trustee in the present bankruptcy case. At or about that time, Plaintiff was appointed as the chapter 11 trustee the Bankruptcy Case.

25. Upon Plaintiff's motion, the Bankruptcy Case was converted to chapter 7 on or about April 19, 2019, at which time Plaintiff was appointed to serve as the chapter 7 trustee in the Bankruptcy Case and continues to serve in such capacity.

26. On September 17, 2019, PM Management filed a proof of claim in the Bankruptcy Case, which claim has been designated on the Claims Register as Claim No. 38-1 (the "PM Management Claim") on account of an intercompany loan to the Debtor.

## FIRST CLAIM FOR RELIEF

### (Avoidance and Recovery of Avoidable Preferential Transfers)

27. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 26 as though set forth in full.

28. Plaintiff is informed and believes, and based thereon alleges, that the 90-Day PM Management Transfers and the 1-Year PM Management Transfers (collectively, the "PM Management Preferential Transfers") satisfy the definition of "transfers" as that term is defined in 11 U.S.C. § 101(54).

29. Plaintiff is informed and believes, and based thereon alleges, that the 90-Day PM Management Transfers and the 1-Year PM Management Transfers were made, respectively, during the 90 day period and the 1-year period prior to the Petition Date to or for the benefit of PM Management as a creditor of the Debtor at the time of the respective transfers, as the term "creditor" is defined by 11 U.S.C. § 101(10).

ASH 2707418v5

-10-

Case 6:21-ap-01100-WJ    Doc 1    Filed 09/01/21    Entered 09/01/21 16:05:13    Desc
Main Document    Page 11 of 18

30. Plaintiff is informed and believes, and based thereon alleges, that the PM Management Preferential Transfers were transfers of interests of the Debtor in property.

31. Plaintiff is informed and believes, and based thereon alleges, that the PM Management Preferential Transfers were made for or on account of antecedent debts owed by the Debtor to PM Management before such transfers, and each of them, were made.

32. Plaintiff is informed and believes, and based thereon alleges, that the PM Management Preferential Transfers were made while the Debtor was insolvent, and, in any event, with respect to the 90-Day PM Management Transfers, the Debtor is presumed to have been insolvent at the time of such transfers, and each of them, were made pursuant to 11 U.S.C. § 547(f).

33. Plaintiff is informed and believes, and based thereon alleges, that, given the financial condition of the Estate, the PM Management Preferential Transfers enabled PM Management to receive more than PM Management would have received if (a) this Bankruptcy Case was a case under chapter 7 of the Bankruptcy Code; (b) such transfers had not been made; and (c) PM Management received payments of such debt to the extent provided by the Bankruptcy Code.

34. Plaintiff is informed and believes, and based thereon alleges, that, as alleged herein and the PM Management Complaint, Plaintiff is entitled to avoid the PM Management Preferential Transfers, and each of them, pursuant to 11 U.S.C. § 547.

35. Plaintiff is informed and believes, and based thereon, that the Debtor Funds comprising the PM Management Preferential Transfers were used to make the Renew Transfers as alleged above.

36. Plaintiff is informed and believes, and based thereon alleges, that through the Renew Transfers, Defendants, and each of them, is a transferee of the avoidable PM Management Preferential Transfers and/or is an entity for whose benefit the PM Management Preferential Transfers were made within the meaning of 11 U.S.C. §

ASH 2707418v5                -11-

550. Based thereon, Plaintiff is entitled to recover the Renew Transfers, and each of them, or the value thereof, together with interest at the applicable rate from the date of each of the PM Management Preferential Transfers for the benefit of the Estate.

## SECOND CLAIM FOR RELIEF

### (Avoidance and Recovery of Avoidable Fraudulent Transfers)

37. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 26 as though set forth in full.

38. Plaintiff is informed and believes, and based thereon alleges, that, as alleged herein and the PM Management Complaint, the PM Management Transfers are avoidable as fraudulent transfers pursuant to 11 U.S.C. §§ 548(a)(1)(A) and (a)(1)(B), and, as incorporated through 11 U.S.C. § 544(b), California Civil Code §§ 3439.04(a)(1), 3439.04(a)(2), 3439.05, and 3439.07.

39. Plaintiff is informed and believes, and based thereon alleges, that, as alleged in the PM Management Complaint, the Debtor made the PM Management Transfers, and each of them: (a) without receiving a reasonably equivalent value in exchange for such transfers in that, among other things (i) the funds were used to pay the debts of parties other than the Debtor and/or entities that Weinberger owned or controlled, and (ii) the Debtor otherwise received no benefit for such transfers, and (b) as alleged above, the Debtor either (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction, (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due, and/or (iii) the Debtor was insolvent at that time or became insolvent as a result of such transfers.

40. Plaintiff is informed and believes, and based thereon alleges, that, as alleged in the PM Management Complaint, the Debtor made the PM Management Transfers with the intent to hinder, delay, and/or defraud creditors of the Debtor in that, without limitation, the PM Management Transfers were: (a) transfers to insiders of the

Debtor; (b) made at a time when the Debtor was sued or threatened with suit as set forth in the Debtor's Statement of Financial Affairs filed in the bankruptcy case; (c) made at a time when the EDD and potentially other creditors were levying on the Debtor's assets or otherwise enforcing claims and liens against the Debtor; (d) made in exchange for less than a reasonably equivalent value; (e) were made shortly before or shortly after the Debtor incurred substantial debt and during a time when the Debtor was in a precarious financial state as alleged above; and (f) the funds were used to pay the debts of parties other than the Debtor and/or entities that Weinberger owned or controlled and to put the funds outside the reach of the Debtor's creditors.

41. Plaintiff is informed and believes, and based thereon alleges, that, as alleged herein and the PM Management Complaint, Plaintiff is entitled to avoid the PM Management Transfers, and each of them, pursuant to the various statutes alleged above.

42. Plaintiff is informed and believes, and based thereon, that the Debtor Funds comprising the PM Management Transfers were used to make the Renew Transfers as alleged above.

43. Plaintiff is informed and believes, and based thereon alleges, that through the Renew Transfers, Defendants, and each of them, is a transferee of the avoidable PM Management Transfers and/or is an entity for whose benefit the PM Management Transfers were made within the meaning of 11 U.S.C. § 550. Based thereon, Plaintiff is entitled to recover the Renew Transfers, and each of them, or the value thereof, together with interest at the applicable rate from the date of each PM Management Transfer for the benefit of the Estate.

### THIRD CLAIM FOR RELIEF

**(Avoidance and Recovery of Avoidable Post-Petition Transfers)**

44. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 26 as though set forth in full.

45. As alleged above, certain of the Renew Transfers made by PM

Management using the Debtor Funds that comprised the PM Management Transfers were made after the Petition Date (the "Post-Petition Renew Transfers").

46. Plaintiff is informed and believes, and based thereon alleges, that the Post-Petition Renew Transfers were not authorized under the Bankruptcy Code or by the Bankruptcy Court.

47. Plaintiff is informed and believes, and based thereon alleges, that through the Post-Petition Renew Transfers, Defendants, and each of them, is a transferee of the avoidable PM Management Transfers and/or is an entity for whose benefit the PM Management Transfers were made within the meaning of 11 U.S.C. § 550. Based thereon, Plaintiff is entitled to recover the Post-Petition Renew Transfers, and each of them, or the value thereof, together with interest at the applicable rate from the date of each PM Management Transfer for the benefit of the Estate.

## FOURTH CLAIM FOR RELIEF

### (Disallowance of Claims)

48. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 47 as though set forth in full.

49. On January 8, 2019, the Debtor filed its Schedules, which, among other things, listed RHG as holding a general unsecured claim in the amount of $34,604.00 (the "RHG Claim"). *See* Bankruptcy Docket No. 57.

50. Pursuant to 11 U.S.C. § 502(d), as well as any other grounds that may be uncovered, the RHG Claim should be disallowed in its entirety. In addition, to the extent any Defendants file a proof of claim, or otherwise assert a claim, in the Bankruptcy Case, any such claim (together with the RHG Claim, the "Defendant Claims") should be disallowed in its entirety under 11 U.S.C. § 502(d), as well as any other applicable grounds.

## RESERVATION OF RIGHTS

51. Plaintiff reserves the right to amend this Complaint to include, among other things, (i) further information or allegations regarding any of the PM Management

ASH 2707418v5

-14-

Transfers or the Renew Transfers, (ii) information, allegations, or claims for relief regarding any additional transfers, (iii) modifications of and revisions to any of Defendants' names, (iv) additional defendants, and (v) additional claims for relief, that may become known to Plaintiff at any time during this adversary proceeding through formal discovery or otherwise, and for the amendments to relate back to the date of filing of this Complaint..

52. Plaintiff reserves the right to bring all other claims for relief that Plaintiff may have against any Defendants, on any and all grounds, as allowed under the law or in equity. Additionally, nothing contained in this Complaint shall be construed as a waiver of Plaintiff's right to object to any proof of claim filed by any Defendants on grounds separate and apart than those alleged herein. Accordingly, Plaintiff reserves the right to object, on any and all grounds, to any proof of claim filed by any Defendant..

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

**ON THE FIRST CLAIM FOR RELIEF**

1. For a judgment and/or order that Plaintiff is entitled to avoid and recover each of the Renew Transfers, or the value thereof, from Defendants under 11 U.S.C. § 550, together with interest at the applicable rate from the date of each PM Management Transfer for the benefit of the Estate.

**ON THE SECOND CLAIM FOR RELIEF**

2. For a judgment and/or order that Plaintiff is entitled to avoid and recover each of the Renew Transfers, or the value thereof, from Defendants under 11 U.S.C. § 550, together with interest at the applicable rate from the date of each PM Management Transfer for the benefit of the Estate.

**ON THE THIRD CLAIM FOR RELIEF**

3. For a judgment and/or order that Plaintiff is entitled to avoid and recover each of the Post-Petition Renew Transfers, or the value thereof, from Defendants under 11 U.S.C. § 550, together with interest at the applicable rate from the date of each PM Management Transfer for the benefit of the Estate.

**ON THE FOURTH CLAIM FOR RELIEF**

4. For a judgment and/or order disallowing each of the Defendant Claims.

**ON ALL CLAIMS FOR RELIEF**

5. For interest in an amount authorized by law;

6. for costs of suit incurred herein, including, to without limitation, attorneys' fees, only to the extent permitted by applicable law; and

7. for such other and further relief as the Court deems just and proper.

DATED: September 1, 2021    **Sulmeyer**Kupetz
A Professional Corporation

By: _____
Asa S. Hami
Attorneys for Plaintiff, Howard M. Ehrenberg,
Chapter 7 Trustee

ASH 2707418v5

-16-

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>HOWARD M. EHRENBERG, solely in his capacity as chapter 7 trustee | **DEFENDANTS**<br>RENEW HEALTH GROUP, LLC, a California limited liability company; RENEW HEALTH CONSULTING SERVICES, LLC, a California limited liability company; CANYON VISTA POST ACUTE LLC, a California limited liability company; and CRYSTAL SOLORZANO, an individual |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Daniel A. Lev<br>　dlev@sulmeyerlaw.com<br>Asa S. Hami<br>　ahami@sulmeyerlaw.com<br>David V. Sack<br>　dsack@sulmeyerlaw.com<br>SulmeyerKupetz<br>A Professional Corporation<br>333 South Grand Avenue, Suite 3400<br>Los Angeles, California  90071-1406<br>Telephone: 213.626.2311<br>Facsimile: 213.629.4520 | **ATTORNEYS** (If Known)<br>Anthony DiMonte<br>Clark Hill LLP<br>1055 West Seventh Street, Suite 2400<br>Los Angeles, California 90017<br>Telephone:  213.417.5342<br>Facsimile:  213.488.1178<br>Email: adimonte@ClarkHill.com |
| **PARTY** (Check One Box Only)<br>☐ Debtor　☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor　☐ Other<br>☒ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor　☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor　☒ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
COMPLAINT FOR: (1) AVOIDANCE AND RECOVERY OF AVOIDABLE PREFERENTIAL TRANSFERS; (2) AVOIDANCE AND RECOVERY OF AVOIDABLE FRAUDULENT TRANSFERS; (3) AVOIDANCE AND RECOVERY OF POST PETITION TRANSFERS, (4) DISALLOWANCE OF CLAIMS.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001( 1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☒ 12-Recovery of money/property - §547 preference
☒ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other

**FRBP 7001 (2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001( 3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4 ) – Objection/ Revocation of Discharge**
☐ 41-Objection/re vocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 6 6 -Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61 -Dischargeability- §523(a)(5 ), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
　(other than domestic support)
☐ 6 5 -Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71 -Injunctive relief- imposition of stay
☐ 72-Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81 -Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91 -Declaratory judgment

**FRBP 7001(10) Deter mi nation of Removed Act ion**
☐ 01 -Determination of removed claim or cause

**Other**
☐ SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.*
☒ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

☐ Check if this case involves a substantive issue of state law　　☐ Check if this is asserted to be a class action under FRCP 23

☐ Check if a jury trial is demanded in complaint　　☒ Demand: No less than $3,687,393

PMD 2727267v1 9/1/2021

B1040 (FORM 1040) (12/15)

| Other Relief Sought |||
|---|---|---|
| For interest and costs of suit. |||
| **BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES** |||
| NAME OF DEBTOR<br>PHILMAR CARE, LLC, || BANKRUPTCY CASE NO.<br>6:18-bk-20286-WJ |
| DISTRICT IN WHICH CASE IS PENDING<br>Central | DIVISION OFFICE<br>Riverside | NAME OF JUDGE<br>Wayne Johnson |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** |||
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ *Asa S. Hami* |||
| DATE<br><br>September 1, 2021 || PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Asa S. Hami |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.